**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JUAN LOOR SOLIZ,<br><br>Petitioner,<br><br>v.<br><br>LUIS SOTO, *et al.*,<br><br>Respondents. | No. 26cv7830 (EP)[1]<br><br>**OPINION** |

**PADIN, District Judge.**

Petitioner Juan Loor Soliz ("Petitioner") has been detained by U.S. Immigration and Customs Enforcement ("ICE") since October 3, 2025, under Section 236(a) of the Immigration and Nationality Act.[2] At a February 25, 2026 bond hearing ordered in an earlier habeas action, an Immigration Judge ("IJ") found that Petitioner did not pose a danger to the community, but denied bond based on flight risk.[3]

Petitioner has now spent more than ten months in civil immigration detention, nearly six months of them after his bond hearing, while his appeal of a February 20, 2026, decision denying relief from removal and ordering him removed remains pending before the Board of Immigration

[1] The present action is referred to as *Loor Soliz II*. Unless otherwise noted, references to "D.E." are to the docket in *Loor Soliz II*. Page citations are to the original document if paginated. Otherwise, page citations are to the page number assigned by the Court's Case Management Electronic Case Filing System ("CM/ECF").

[2] 8 U.S.C. § 1226(a).

[3] *Loor Soliz v. Soto*, No. 26-420 (D.N.J.) ("*Loor Soliz I*"), D.E. 8-1("Feb. 25, 2026 IJ Order"); D.E. 31-1 ("Bond Transcript") at 13–15.

Appeals ("BIA").[4] In the present petition for a writ of habeas corpus, he contends that continued detention has become constitutionally unreasonable and seeks immediate release.[5]

The Third Circuit's decision in *Borbot v. Warden Hudson County Correctional Facility* sets the framework for deciding that claim.[6] *Borbot* holds that the passage of time, standing alone, does not establish a due process violation after a Section 1226(a) detainee has received the process provided by statute and regulation.[7] But it expressly left open whether detention may later become unreasonably prolonged through Government delay or "some other cause."[8] This case presents that question.

The present record establishes more than the passage of time. Nearly six months after the February bond hearing—and after the Court specifically directed Respondents to address whether conditions of supervision could mitigate flight risk—the evidentiary record contains no individualized reassessment of whether physical detention remains necessary and no analysis of whether stringent release conditions could adequately address the sole asserted basis for custody.[9] The IJ had already found that Petitioner posed no danger, the BIA appeal remains pending, and Respondents have identified no near-term endpoint to detention. Taken together, those circumstances render continued physical custody constitutionally unreasonable. The Petition is

[4] D.E. 6 ("Response") at 1–3.

[5] D.E. 1 ("Petition" or "Pet.") at 1–2, 6–15.

[6] 906 F.3d 274 (3d Cir. 2018).

[7] *Id.* at 277–80.

[8] *Id.* at 280.

[9] *See* D.E. 8 ("July 15 Order"); D.E. 9 ("ATD Letter") at 1–2; D.E. 33, July 30, 2026 Hearing Transcript ("Tr. I") at 91:10–94:16; Bond Transcript at 13–15.

therefore **GRANTED**, and Petitioner will be released under reasonable noncustodial conditions of supervision.

# I. BACKGROUND

## A. Petitioner's Entry, Release, and October 2025 Detention

Petitioner is a citizen of Ecuador. *Loor Soliz I*, D.E. 1, Petition ¶ 10. He entered the United States near Columbus, New Mexico, on or about October 25, 2022, without inspection. D.E. 6-1 ("Form I-213") at 2. After immigration officials processed him for expedited removal, they released him from custody on December 16, 2022. *Id.* Petitioner then lived in New Jersey for nearly three years, worked with authorization, developed relationships, and established ties in his community. *Loor Soliz I*, Petition ¶ 40. Petitioner has no known criminal history. Form I-213 at 2.

Petitioner sought asylum[10] in December 2023 based on alleged persecution in Ecuador arising from his sexual orientation and gender identity. *Loor Soliz I*, Petition ¶ 39. On October 3, 2025, he appeared at the Newark Asylum Office for a scheduled credible fear interview; ICE arrested him there without incident and transferred him to Delaney Hall Detention Facility in Newark ("Delaney Hall"), where he has remained since then. Response at 2; Form I-213 at 3.

## B. Removal Proceedings and *Loor Soliz I*

After his October 2025 arrest, Petitioner filed a habeas petition in *Loor Soliz I* to challenge the statutory and procedural basis for his detention. On February 19, 2026, the Court held that § 1226(a) governed and that ICE had violated procedural due process by returning Petitioner to custody without the process required to determine whether detention was justified by flight risk or

[10] D.E. 17-3 ("Asylum Hrg. Tr.").

danger. *Loor Soliz I*, D.E. 7 (D.N.J. Feb. 19, 2026). The Court ordered an individualized bond hearing within seven days. *Id.*

Meanwhile, on February 20, 2026, Immigration Judge Joshua Hawkes ("IJ Hawkes") denied Petitioner's applications for asylum, withholding of removal, and protection under the Convention Against Torture, and ordered him removed. Asylum Hrg. Tr. at 148–49; D.E. 6-2 ("Removal Order"). Petitioner timely appealed to the BIA. D.E. 6-3 ("BIA Extension Request") at 2. Because the removal order is not administratively final, the statutory removal period has not begun and ICE cannot presently remove him. Response at 2.

Immigration Judge Shana W. Chen ("IJ Chen") conducted the bond hearing ordered by this Court on February 25, 2026. Bond Transcript. Through counsel, Petitioner presented evidence concerning his prior release, lack of criminal history, compliance with immigration requirements, employment and tax history, fixed residence, family ties, community support, and continued representation. Bond Transcript at 2–10. Respondents opposed release on flight risk grounds, relying principally on IJ Hawkes's adverse credibility finding and the removal order. *Id.* at 10–11.

IJ Chen found that Petitioner did not pose a danger to the community, but had not carried his burden to show that he was not a flight risk. *Id.* at 11–13. She relied on IJ Hawkes's adverse credibility finding and on the fact that Petitioner's remaining avenues of relief depended on appellate review. *Id.* IJ Chen also considered his family connections, counsel, and community support, but concluded that those considerations did not overcome the flight risk concern. *Id.*

Petitioner did not appeal the February 25 bond decision to the BIA and has not requested another custody determination under 8 C.F.R. § 1003.19(e). Tr. I at 30:22–31:22. He instead moved for reconsideration in *Loor Soliz I*, again seeking immediate release. *Loor Soliz I*, D.E. 10.

The Court denied reconsideration because the Court-ordered bond hearing had supplied the remedy for the procedural violation identified in that action. *Id.*, D.E. 14 (D.N.J. Apr. 9, 2026). The case was closed on April 27, 2026. *Id.*, D.E. 15. The present claim therefore concerns the additional detention and later circumstances, not the adequacy of the February remedy.

### C. *Loor Soliz II* and Development of the Record

Petitioner filed this second § 2241 action on June 26, 2026. Pet. Respondents filed the Response on July 6, 2026, and Petitioner filed a reply, D.E. 7 ("Reply"), on July 13, 2026. The Response argued that *Borbot* foreclosed relief because Petitioner had already received a § 1226(a) bond hearing and could request another custody determination based on materially changed circumstances. Response at 5. The Reply argued that the duration, likely continuation, and conditions of detention, considered together, had rendered continued custody unconstitutional. Reply at 4–10.

On July 15, 2026, the Court ordered the parties to confer about release through ICE's Alternatives to Detention program ("ATD"). July 15 Order. If Respondents opposed ATD, the July 15 Order required them to "explain the factual and legal bases for that position and identify any conditions of release they contend would be insufficient to address their concerns." *Id.* In the parties' responsive joint submission, Petitioner proposed supervised release, while Respondents maintained that ATD "with any conditions" was inappropriate based principally on the removal order, pending BIA appeal, prior bond decision, and their reading of *Borbot* and related cases. ATD Letter at 1–2. Respondents did not identify any particular condition or combination of conditions that had been evaluated and found insufficient for Petitioner. *Id.*

On July 24, 2026, the Court found the written record insufficient to decide whether Petitioner's circumstances and conditions of confinement, together with the duration of detention and the availability of less restrictive alternatives, rendered continued detention unconstitutional.

D.E. 10 ("July 24 Order"). The Court scheduled an evidentiary hearing to address, among other matters, "whether conditions available through the Alternative to Detention Program could adequately mitigate any risk of flight." *Id.* The July 24 Order also directed Respondents to produce witnesses with personal knowledge of Petitioner's circumstances and ATD eligibility. *Id.*

The Court held the hearing on July 30 and August 5, 2026. D.E. 21; D.E. 27; Tr. I; D.E. 35 Hearing Transcript Vol. II, Aug. 5, 2026 ("Tr. II"). At the outset, the Court stated that it would not reweigh the February bond decision. Tr. I at 6:25–7:2. The question for the Court was whether the additional duration of detention and later developments, considered together, brought the case within the circumstance *Borbot* left open. Tr. I at 7:3–8:16. After the hearing, the Court ordered production of the certified Bond Transcript and permitted supplemental briefing as requested by Respondents. D.E. 26 ("August 6 Order"). Respondents filed a supplemental brief, D.E. 30 ("Government Supplement"), and Petitioner filed a supplemental brief, D.E. 32 ("Petitioner Supplement").

**D. The Evidentiary Hearing**

*1. Petitioner's testimony about continued confinement*

Petitioner testified about events after the February bond hearing that, in his view, increased the burden of confinement. He described recurring headaches and facial pain, episodes of tachycardia and anxiety, and delays in responses to some medical requests. Tr. I at 12:20–15:12. He also described an incident in which chemical agents were discharged in or near his housing area. *Id.* at 15:15–16:13. Petitioner testified that the incident caused substantial anxiety and was followed by headaches, chest pain, and facial symptoms. *Id.*

In June, Petitioner reported head pain and facial symptoms to Delaney Hall medical staff and was sent to an outside hospital for emergency evaluation. *Id.* at 16:14–18:17. On cross-examination, he acknowledged that the hospital discharged him, that he later received follow-up

care, and that Delaney Hall personnel saw him on multiple occasions. *Id.* at 44:20–46:20. The admitted medical records, D.E. 14-1 ("Medical Records"), document those encounters, medication, and the hospital evaluation.

Petitioner also attributed some harassment at Delaney Hall to his sexual orientation. Tr. I at 19:22–27:1. Respondents challenged the specificity of that testimony and noted that Petitioner had not filed a formal written grievance concerning the alleged harassment. *Id.* at 51:5–22. The Court gives this disputed testimony limited weight and finds that Petitioner experienced some harassment based on his sexual orientation, but did not formally report any incident in writing prior to filing this action.[11]

The hearing also addressed release conditions. Evidence of Petitioner's community support existed at the time of the February 2026 hearing and remains available. Tr. I at 31:18–32:23. Petitioner testified that he would comply with electronic monitoring, geographic restrictions, surrender of travel documents, home visits, reporting requirements, and other conditions of supervision. *Id.* at 32:1–19.

*2. Respondents' evidence concerning custody and ATD*

Respondents called one witness: Supervisory Detention and Deportation Officer Edvin M. Gonzalez, Jr. ("Gonzalez"). Tr. I at 58:5–102:13; Tr. II at 127:1–169:25. Gonzalez testified about general procedures for medical requests, detainee complaints, classification, and release supervision. *See* Tr. I at 58:14–96:3; Tr. II at 127:1–169:25.

On the issue of Petitioner's custody, Gonzalez testified that neither he nor the officers he supervised had reassessed Petitioner's flight risk since the February bond hearing. Tr. I at 91:22–92:1. He also had not analyzed what conditions could mitigate any risk. *Id.* at 92:15–18.

[11] The parties' separate disputes about three exhibits are addressed *infra*.

Nor could he identify who had determined, as reflected in the ATD Letter, that ATD was inappropriate for Petitioner following this Court's July 15 Order. *Id.* at 94:4–11.

Respondents called no other witness with personal knowledge of a later custody assessment or individualized ATD analysis. The Government Supplement instead argues that no reassessment was constitutionally required because Petitioner received a bond hearing in February and remained free to seek another custody determination under § 1003.19(e). Government Supplement at 1–6.

## II. LEGAL STANDARDS

### A. Habeas Review and Detention Under Section 1226(a)

A district court may grant habeas relief to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Federal courts therefore retain jurisdiction to consider constitutional challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003).

Section 1226(a) authorizes detention "pending a decision on whether the alien is to be removed from the United States" and permits release on bond or conditional parole. 8 U.S.C. § 1226(a). A detainee may seek bond before an IJ, appeal an adverse decision to the BIA, and request another custody determination upon a showing that circumstances have "changed materially since the prior bond redetermination." 8 C.F.R. §§ 1003.19(e), (f), 1236.1(d)(1). At an ordinary § 1226(a) bond hearing, the detainee bears the burden to show that release would not pose a danger and that the detainee is likely to appear for future proceedings. *Borbot*, 906 F.3d at 279.

### B. Section 1226(e)

Section 1226(e) precludes this Court from reviewing the Attorney General's discretionary judgment regarding detention or bond. 8 U.S.C. § 1226(e). A district court therefore may not

reweigh the evidence considered by an IJ or decide whether the IJ reached the correct discretionary result. *Borbot*, 906 F.3d at 279; *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2–3 (3d Cir. Feb. 25, 2022). Constitutional challenges to the legal framework or process authorizing detention remain reviewable. *Borbot*, 906 F.3d at 279–80; *Demore*, 538 U.S. at 516–17.

### C. Constitutional Limits on Prolonged Section 1226(a) Detention

The Fifth Amendment's Due Process Clause protects the fundamental liberty interest in freedom from physical restraint. *Zadvydas*, 533 U.S. at 690. "[T]he Constitution may well preclude granting 'an administrative body the unreviewable authority to make determinations implicating fundamental rights.'" *Id.* at 692 (citation modified). *Borbot* supplies the controlling framework for detention under § 1226(a). There, the Third Circuit rejected the argument that the length of detention—despite an earlier bond hearing—entitled the detainee to another hearing at which the Government would bear the burden. 906 F.3d at 276–80. Because § 1226(a) provides an initial bond hearing, BIA review, and later redetermination upon materially changed circumstances, duration alone could not establish a due process violation. *Id.* at 277–80. The Court accordingly declined to import wholesale the reasonableness framework developed for mandatory detention under § 1226(c). *Id.* at 279–80.

Nevertheless, *Borbot* recognized that detention under § 1226(a) "might become unreasonably prolonged" through Government delay or "some other cause," and it left for another case when due process might require further relief. *Id.* at 280. A detainee who has already received meaningful bond process therefore must show more than the passage of time.

*German Santos v. Warden Pike County Correctional Facility* identifies four useful guideposts for evaluating the constitutional character of prolonged civil detention: (1) duration, (2) likely continuation of the ongoing detention, (3) why the detention has become prolonged,

including whether either side is responsible for delay in the immigration proceedings, and (4) whether the conditions of confinement are meaningfully different from criminal punishment. 965 F.3d 203, 210–12 (3d Cir. 2020). Because *German Santos* arose under § 1226(c), those considerations do not establish a fixed rule for § 1226(a), but are nevertheless instructive.

*Velasco Lopez v. Decker* also provides persuasive guidance on the process question presented here, as it addressed prolonged detention under § 1226(a). 978 F.3d 842, 851–57 (2d Cir. 2020). There, the Second Circuit applied the familiar framework from *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Id.* at 851–55. It considered the detainee's substantial liberty interest, the growing risk of error as detention continued, the value of requiring the Government to use its information and resources to justify custody, and the modest administrative burden of that safeguard. *Id.* The court held that fifteen months of detention "with no end in sight" under procedures that never required Government justification violated due process, and it affirmed a new hearing at which the Government bore the burden of proof by clear and convincing evidence. *Id.* at 846, 855–57. The reasoning in *Velasco Lopez* explains why the risk of erroneous detention, and the value of current information bearing on necessity of detention, increase as § 1226(a) detention materially lengthens.

## III. DISCUSSION

### A. The Claim Properly Before the Court

Respondents invoke an argument they have pressed throughout these proceedings: that the party-presentation principle limits the scope of the Court's review. They argue that the Court should not decide an unpleaded challenge to the February bond hearing or a separate conditions claim. Government Supplement at 1–2. *Margolin v. National Ass'n of Immigration Judges* reiterates that courts ordinarily decide the issues the parties present rather than grant relief on a different, unlitigated claim. 608 U.S. ___, 2026 WL 1463466, at *2 (May 26, 2026) (per curiam).

The Court's inquiry and ultimate disposition fit comfortably within those bounds. Count I alleges that Petitioner's continued § 1226(a) detention has become unreasonably prolonged, and the Petition seeks immediate release. Pet. at 26–30. The Reply relies on the duration and likely continuation of detention, the conditions of Petitioner's confinement, and the absence of dilatory conduct. Reply at 4–10. Respondents contest that claim under *Borbot* and argue that, if relief is warranted, a new bond hearing, rather than release, would be the proper remedy. Response at 2–5; Government Supplement at 1–6.

The Court disagrees with Respondents. The health and confinement evidence—which Respondents maintain is beyond the scope of this action—does not present a separate claim. The Court considers that evidence only insofar as it informs the burden imposed by Petitioner's continued detention and the constitutional reasonableness of that detention. The parties litigated that prolonged-detention claim through the ATD submission, the evidentiary hearing, and supplemental briefing. ATD Letter; Tr. I at 6:1–10:7; Government Supplement; Petitioner Supplement. Accordingly, the Court decides the prolonged-detention claim Petitioner pleaded; it does not adjudicate a separate challenge to the February bond hearing or a freestanding conditions-of-confinement claim.

**B. The February 25 Bond Hearing**

The February 25 hearing supplied the process required for an ordinary § 1226(a) bond determination. Petitioner appeared through counsel, knew the basis for Respondents' opposition, presented evidence and argument, and received an individualized decision. Bond Transcript at 4–13. Petitioner does not contest that those procedures satisfied the minimum due process standard for a fundamentally fair bond hearing pursuant to *Ghanem*: factfinding on a disclosed record, an opportunity to be heard, and an individualized determination. 2022 WL 574624, at *2.

Section 1226(e) accordingly forecloses any request that this Court reassess how IJ Chen weighed the evidence submitted at the February bond hearing. *See Ghanem*, 2022 WL 574624, at *2–3; *Trinidad Palillero v. Blanche*, No. 26-5922, D.E. 16 (D.N.J. July 27, 2026). The Bond Transcript also confirms that IJ Chen relied on more than the removal order or pending appeal. She considered the adverse credibility finding, Petitioner's family and community support, and the availability of counsel before finding that Petitioner was a flight risk. Bond Transcript at 12–15. While the February determination remains valid, *Borbot* permits review of whether the later duration and circumstances of Petitioner's detention have produced a distinct constitutional problem. 906 F.3d at 279–80.

### C. Exhaustion Does Not Bar the Present Claim

Respondents argue that Petitioner failed to exhaust (and in turn this Court lacks jurisdiction) because he neither appealed the February bond denial nor requested a redetermination under § 1003.19(e). Government Supplement at 4–6. That omission carries weight because *Borbot* relied on those administrative avenues in distinguishing § 1226(a) from mandatory detention. 906 F.3d at 278–80. Even so, the omission neither eliminates habeas jurisdiction nor requires dismissal on this record.

Section 2241 contains no statutory exhaustion requirement. *Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998); *Alves Silveira v. Soto*, No. 26-7835, 2026 WL 2111350, at *2 (D.N.J. July 22, 2026). Respondents rely on *Duvall v. Elwood* and *Jelani B. v. Anderson* for jurisdictional exhaustion language. Government Supplement at 4–6; *Duvall*, 336 F.3d 228, 233–34 (3d Cir. 2003); *Jelani B.*, No. 20-6459, 2020 WL 5560161, at *2 (D.N.J. Sept. 17, 2020). The petitioner in *Jelani B.* had never requested the initial § 1226(a) hearing available to him. 2020 WL 5560161, at *2. Petitioner's failure to invoke § 1003.19(e) therefore does not deprive the Court of jurisdiction.

Section 1003.19(e) nonetheless remains important. *Alves Silveira* illustrates the ordinary role of redetermination. There, criminal charges supporting the IJ's dangerousness finding were dismissed and expunged, and a § 1003.19(e) request based on that same change was already pending. 2026 WL 2111350, at *1–2. The district court denied the second habeas petition without prejudice because the precise custody issue remained before the agency. *Id.* at *2.

Petitioner's claim is different. His sponsor, residence, and core release plan have not materially changed. Tr. I at 31:23–32:19. Nor does he ask this Court to revisit the February flight risk determination because of a single new fact. His claim concerns the constitutional effect of accumulated detention and later circumstances: the length and uncertain continuation of custody, the practical burden of confinement, and the absence of a current assessment of whether physical detention remains necessary. Those circumstances arose after the February decision and could not have been presented in an appeal from it.

Requiring a § 1003.19(e) request would not materially advance the prudential purposes of exhaustion. *See Gambino*, 134 F.3d at 171 (holding exhaustion is not required where the administrative process would be futile). Petitioner is unable to determine the circumstances under which prolonged detention under § 1226(a) violated due process through a custody redetermination under § 1003.19(e). That is an issue for a habeas court. Here, the Court has developed the relevant facts through a two-day hearing, the Bond Transcript, the Medical Records, proposed release conditions, and testimony from Respondents' supervisory witness. The district court in *Velasco Lopez* likewise excused prudential exhaustion because the BIA's established custody rules could not resolve the constitutional burden-of-proof question. No. 19-2912, 2019 WL 2655806, at *2–3 (S.D.N.Y. May 15, 2019), *aff'd*, 978 F.3d 842 (2d Cir. 2020). Because no

material factual issue remains for agency development, the Court excuses prudential exhaustion of this as-applied due process claim.

The facts in *Onuwa v. Field Office Director* were also different from those presented by this action. No. 26-2403, 2026 WL 772435, at *1–2 & n.1 (D.N.J. Mar. 19, 2026). There, the petitioner challenged the burden and merits of a recent bond decision while his bond appeal remained pending and relied principally on detention approaching one year. *Id.* Here, Petitioner accepts the February hearing as valid, and instead rests his claim on a substantial post-hearing record developed months later. Accordingly, Petitioner's failure to pursue further administrative bond review does not require dismissal of this later-arising, as-applied challenge to the constitutional reasonableness of his continued detention.

**D. Petitioner's Continued Detention Has Become Constitutionally Unreasonable**

The Court's merits analysis proceeds in two steps. The Court first considers the four circumstances identified in *German Santos*—duration, likely continuation, reasons for delay, and conditions of confinement—as guideposts for the present character of detention. 965 F.3d at 210–12. Next, the Court asks whether the developed record contains the additional circumstance *Borbot* contemplated when it left open detention made unreasonable by Government delay or "some other cause." *Borbot*, 906 F.3d at 280. The Court concludes that the "some other cause" is the Government's failure to consider why even the most stringent conditions of supervision would be insufficient to address the risk that Petitioner will not cooperate with his removal if his appeals are unsuccessful.

*1. Duration*

Petitioner has been detained for more than ten months—since October 3, 2025. Nearly six months have elapsed since the February bond hearing. That time period is substantial, although not dispositive; as noted above, *Borbot* rejects a claim based on duration alone. 906 F.3d at 276–

77. *German Santos* likewise rejects a fixed temporal rule even under § 1226(c). 965 F.3d at 210–11. Duration nevertheless favors Petitioner because his duration of civil detention has more than doubled since his bond hearing.

2. *Likely continuation*

Contrary to *Borbot*—whose detention had a discernible ending as his removal proceedings were near conclusion, 906 F.3d at 277—Petitioner's detention has no demonstrated endpoint in sight. Petitioner's BIA appeal remains pending. At the outset of the evidentiary hearing, the Court specifically identified "the current status and likely duration" of the BIA proceedings as an issue on which it expected evidence. Tr. I at 8:5–16. The BIA appeal had proceeded to the briefing stage, but the parties produced no expected decision date or other near-term event likely to bring Petitioner's detention to an end. *See* Response at 1–2. No statistics were produced that would allow the Court to infer the average decision time of a BIA appeal. *Id.* Furthermore, Petitioner may appeal the BIA determination if it is unfavorable. The record does not identify an imminent event likely to end custody. This factor therefore favors Petitioner. *See German Santos*, 965 F.3d at 211–12.

3. *Reasons for delay*

The reasons for delay are neutral. The record does not show bad faith by Respondents, and the Court does not hold the Government accountable for ordinary adjudication time. Petitioner sought one 21-day extension to prepare his BIA brief because of counsel's competing obligations. BIA Extension Request at 2–4. Nothing suggests that request was intended to prolong detention. Importantly, a noncitizen's good faith pursuit of available review does not count against him in determining whether additional procedural protections are required for prolonged civil detention. *German Santos*, 965 F.3d at 211–12; *Leslie v. Att'y Gen.*, 678 F.3d 265, 271 (3d Cir. 2012).

*4. Conditions of confinement*

The conditions of confinement favor Petitioner. He is held in secure civil custody under substantial restrictions on movement; by way of example, Petitioner remained in restraints during his June hospital transport, Tr. I at 16:14–21:17, as well as when he was brought to the evidentiary hearing in this matter. Petitioner also described delays in treatment for medical symptoms, an incident involving chemical agents, and harassment based on his sexual and gender identity that made confinement more difficult. *Id.* at 12:1–30:10. Respondents produced records of medical evaluation and treatment and disputed the severity of any deterioration in Petitioner's physical or mental health. *Id.* at 38:1–53:14; Medical Records. The Court gives limited weight to the disputed harassment testimony and finds no separate constitutional violation arising from medical care or conditions. Even so, the admitted evidence confirms the substantial practical burden of this prolonged civil confinement that shares many attributes with criminal punishment. *See German Santos*, 965 F.3d at 211–13.

*5. The additional circumstance under Borbot*

Considering the four *German Santos* guideposts alone would make this a closer case. For example, *Dabre v. Soto* denied relief when the petitioner's detention reached approximately eleven months, the petitioner had received a bond hearing only a few months earlier, and "ha[d] not presented any evidence warranting further relief." No. 26-6631, 2026 WL 1662612, at *2 (D.N.J. June 9, 2026). *Onuwa* likewise denied relief despite detention approaching one year. 2026 WL 772435, at *2.

The record here, however, is materially different from those cases. The Court ordered an individualized hearing on present necessity for continued detention and less restrictive alternatives. The hearing was necessary to determine the question left open by *Borbot*—when due process requires something more than a bond redetermination hearing under § 1236.1(d)(1) or a hearing

on changed circumstances under § 1003.19(e). The July 15 Order expressly required Respondents to identify why proposed conditions of supervision would be insufficient to alleviate Petitioner's flight risk. The July 24 Order then set a hearing to determine "whether conditions available through the Alternative to Detention Program could adequately mitigate any risk of flight" and required witnesses with personal knowledge of Petitioner's ATD eligibility. Those directives sought the facts necessary to resolve the later-accruing constitutional claim. Here, in contrast to the petitioner in *Borbot*, whose detention was premised on dangerousness, 906 F.3d at 276, Petitioner's flight risk is the only Government interest justifying his detention, *see* Bond Transcript at 13–15; ATD Letter at 1–2.

Respondents' proof did not supply a current assessment. The ATD Letter relied on the removal order, pending appeal, existing bond decision, and Respondents' legal position that *Borbot* authorized continued detention. ATD Letter at 1–2. Gonzalez then confirmed that neither he nor his team had reassessed Petitioner's flight risk or analyzed what conditions could mitigate it. Tr. I at 91:22–94:11. No other witness supplied that analysis, despite a Court order requiring Respondents to produce one or more witnesses with personal knowledge of Petitioner's eligibility for release through ATD. *See* July 24 Order.

The absence of any current assessment of Petitioner's flight risk, or of whether conditions of supervision could mitigate that risk, is critical to the regulatory purpose of detention. IJ Chen found no danger, Bond Transcript at 11–13, and Respondents continue to rely on flight risk as the basis for custody, ATD Letter at 1–2.[12] As detention lengthens, an increasingly remote assessment

---

[12] At the February 25 bond hearing, Petitioner's counsel invoked *Matter of Akhmedov* and argued that, once danger is ruled out, the inquiry proceeds to the "monetary amount or other conditions." Bond Transcript at 6 (citing *Matter of Akhmedov*, 29 I&N Dec. 166 (BIA 2025)). IJ Chen responded that she was "familiar with [her] obligations" and directed counsel to address danger

provides less assurance that physical confinement remains necessary. "The longer the duration of incarceration, the greater the deprivation." *Velasco Lopez*, 978 F.3d at 852.

The *Mathews* factors, as applied in *Velasco Lopez*, show why the missing assessment is consequential. *Id.* at 851–55 (citing *Mathews*, 424 U.S. at 335). Petitioner's private interest in freedom from imprisonment is substantial because he remains in physical custody, unable to be with family or friends outside visiting hours. *Id.* at 851. The risk of error has grown because the February process placed the burden on Petitioner and never required the Government to justify detention on a current record. "[A]s the period of . . . confinement grows," so do the required procedural protections no matter what level of due process may have been sufficient at the moment of initial detention. *Id.* at 853 (citation modified). Current information also has substantial value because ICE controls the relevant officials, records, and supervision options. *Id.* ("After fifteen months, the Government had not found information sufficient to show that Velasco Lopez was a poor bail risk, and indeed, it was in possession of important information indicating the contrary.") Producing that information imposed little administrative burden: the Court identified the issue in advance, directed Respondents to produce knowledgeable witnesses, and held the hearing over

---

and flight risk. *Id.* In her ruling, IJ Chen found no danger but framed the flight risk inquiry as "whether there is an amount of bond that could be set" to assure Petitioner's appearance and compliance with future orders. *Id.* at 12. Thus, she denied bond without expressly addressing nonmonetary conditions of supervision or finding that such conditions would be inadequate. *Id.* at 12–13.

While that omission does not render the February hearing constitutionally deficient, it means that the February determination did not resolve the distinct question presented by the developed record months later—whether physical confinement remains necessary when stringent conditions of supervision are available. *Cf. Matter of Akhmedov*, 29 I&N Dec. at 168 (concluding that "[n]o monetary bond, even if coupled with alternatives to detention," would sufficiently mitigate flight risk); *Matter of A-W-M-K-*, 29 I&N Dec. 805, 809 (BIA 2026) (affirming where the IJ concluded that "no reasonable bond amount, even if coupled with alternatives to detention," could ensure appearance).

two days. *Id.* at 854–55 ("The Government has not convinced us that requiring it to justify Velasco Lopez's detention by clear and convincing evidence substantially undermines its legitimate interests or entails an undue administrative burden."). Even then, the record contained no petitioner-specific assessment of why detention, rather than stringent supervision, remained necessary.

To be sure, the Court's conclusion remains within *Borbot*'s limits. The holding rests on the record developed in this case: detention has materially extended beyond the February hearing with no demonstrated near-term endpoint; flight risk is the sole asserted regulatory concern; and, after an evidentiary inquiry focused on whether conditions could address that concern, Respondents identified no current individualized basis for physical confinement. Those combined circumstances place Petitioner within the narrow category *Borbot* reserved. At bottom, the Court concludes that continued detention is no longer reasonably related to its regulatory purpose.

*6. Recent decisions in this District*

Recent decisions in this District mark both sides of the line. *Dabre* and *Onuwa* emphasize the significance of a prior bond hearing and the administrative avenues identified in *Borbot*. 2026 WL 1662612, at *2; 2026 WL 772435, at *2 & n.1. By contrast, *Rodriguez v. Bondi*, *Carchipulla Espinoza v. Bondi*, and *Perez Sierra v. Bondi* found later detention constitutionally unreasonable where the Government offered no current individualized basis for continued confinement. *Rodriguez*, No. 26-902, 2026 WL 1030603, at *2–3 (D.N.J. Apr. 16, 2026); *Carchipulla Espinoza*, No. 25-18871, 2026 WL 1481368, at *3–4 (D.N.J. May 27, 2026); *Perez Sierra*, No. 25-18829, 2026 WL 497070, at *4–5 (D.N.J. Feb. 23, 2026).

The latter decisions are persuasive, not controlling, and *Rodriguez* and *Carchipulla Espinoza* do not grapple with *Borbot* at length. The Court therefore relies on their factual distinction rather than any general rule of continuing Government justification. And unlike *Dabre*,

where the petitioner offered no additional evidence warranting relief, the record here establishes what custody and ATD analysis occurred after February: none. That difference places this case within *Borbot*'s reserved question.

### E. Immediate Release Is the Appropriate Remedy

Section 2243 directs a habeas court to "dispose of the matter as law and justice require." 28 U.S.C. § 2243. A new bond hearing is ordinarily the natural remedy when prolonged immigration detention becomes unconstitutional. For example, *German Santos* ordered a hearing at which the Government had to justify detention by clear and convincing evidence. 965 F.3d at 213–14. *Velasco Lopez* affirmed the same remedy for prolonged § 1226(a) detention. 978 F.3d at 855–57.

This case has already afforded Respondents the evidentiary opportunity that another hearing would ordinarily provide. The Court required an answer from an official with personal knowledge of Petitioner's removal plan, D.E. 4; directed Respondents to explain why supervised release and particular conditions would be insufficient, July 15 Order; required witnesses with personal knowledge of Petitioner's circumstances and ATD eligibility, July 24 Order; held a two-day evidentiary hearing; obtained the Bond Transcript; and permitted supplemental briefing, August 6 Order. Respondents thus had repeated notice that the present necessity for detention, the increased burden on Petitioner's liberty, and less restrictive alternatives to address flight risk were central to the Petition. The completed record still contains no individualized reassessment or conditions of supervision analysis after February. Tr. I at 91:22–94:11.

In the Court's view, *Perez Sierra v. Margolin* is the closest remedial analogue. No. 25-18829, 2026 WL 800158, at *4 (D.N.J. Mar. 23, 2026). There, after finding continued detention constitutionally infirm, the court gave the Government a specific opportunity to present an individualized justification. *Id.* at *2–3. When the Government relied on the removal order and

pending appeal without supplying current evidence, the court ordered release under reasonable conditions rather than another bond hearing. *Id.* at *3–4.

The sequence here is different because this Court had not formally shifted the burden and required clear and convincing evidence before the evidentiary hearing. The opportunity to address the current need for detention to address flight risk was nonetheless extensive. The July orders identified the precise issues; Respondents selected their witness; the hearing continued over two days; and both sides addressed the completed record in supplemental briefs. A new hearing would now allow Respondents to assemble, after the habeas record closed, the individualized justification they were already asked to present while Petitioner remains confined. That would prolong the constitutional injury rather than cure it.

Release is appropriately tailored. ICE may impose reasonable noncustodial conditions consistent with law, including electronic monitoring, reporting requirements, geographic restrictions, document surrender, or other ATD measures. *See* 8 U.S.C. § 1226(a)(2). On this record, law and justice require release rather than further detention pending another round of process. 28 U.S.C. § 2243.

**F. Respondents' Evidentiary Objections Are Sustained**

Respondents objected to three exhibits: Petitioner's Exhibit 1, a redacted ICE Significant Incident Report concerning another detainee; Exhibit 2F, a February 2026 psychological evaluation by Dr. Mary Watkins; and Exhibit 5, an August 2026 affidavit by Dr. Sofia Sami. D.E. 28 ("Government Objections"); D.E. 29 ("Objection Response"). The objections are sustained.

Although Exhibit 1 was marked and received during cross-examination, the Court later permitted Respondents to object to its admission. Tr. II at 137:1–139:25; August 6 Order. Petitioner offered the report to impeach Gonzalez's testimony about sexual assault response procedures. Objection Response at 2–4. The report is not Gonzalez's prior statement and does

not contradict his testimony that he personally had not implemented those procedures. It also concerns a different detainee and personnel outside Gonzalez's direct knowledge. Tr. II at 139:1–141:25. Its slight impeachment value is substantially outweighed by the risk of confusing the issues and requiring a collateral inquiry into an unrelated incident. *See* Fed. R. Evid. 401, 403, 613. Respondents' objection to Exhibit 1 is sustained.

Exhibits 2F and 5 contain expert opinions offered without live testimony. Petitioner did not call either clinician, so Respondents had no opportunity to test the clinicians' qualifications, methods, or conclusions through cross-examination. The reports also contain multiple layers of out-of-court statements, and Exhibit 5 was produced less than a day before the continued hearing. Government Objections at 3–4; Objection Response at 4–10. Rule 803(4) may cover some statements that Petitioner made for diagnosis, but it does not admit the clinicians' own opinions. Nor has Petitioner established the guarantees of trustworthiness and notice required by Rule 807. *See* Fed. R. Evid. 702, 802, 803(4), 807. Respondents' objections to Exhibits 2F and 5 are sustained.

These rulings do not affect the disposition. The Court relies on the Bond Transcript, the Medical Records, live testimony, the ATD Letter, and the uncontested procedural record. Those sources establish the duration and posture of detention, Petitioner's willingness to accept supervision, and the absence of a later individualized custody or ATD assessment.

## IV. CONCLUSION

For the foregoing reasons, the Petition is **GRANTED**. Respondents shall release Petitioner within twenty-four hours under reasonable noncustodial conditions of supervision consistent with 8 U.S.C. § 1226(a). An appropriate Order accompanies this Opinion.

Date: **August 18, 2026**

Evelyn Padin, U.S.D.J.